# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **PASO DEL NORTE MOTORS,** | § | |
| **LP, d/b/a VIVA KIA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-15-CV-33-PRM** |
| | § | |
| **TRI STAR PARTNERS, LLC,** | § | |
| **d/b/a INTEGRITY KIA,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On this day, the Court considered Defendant Tri Star Partners, LLC's "Motion for Summary Judgment" (ECF No. 73) [hereinafter "Motion"], filed on August 28, 2015, Plaintiff Paso Del Norte Motors LP's "Response to Tri Star Partners, LLC's Motion for Summary Judgment" (ECF No. 92) [hereinafter "Response"], filed on September 17, 2015, Defendant's "Reply Brief in Support of Motion for Summary Judgment" (ECF No. 105) [hereinafter "Reply"], filed on September 24, 2015, and Plaintiff's "Surreply Regarding Defendant's Motion for Summary Judgment Based upon the Doctrine of Agency Deference"

(ECF No. 114) [hereinafter "Sur-reply"], filed on October 8, 2015,[1] in the above-captioned cause.  In its Motion, Defendant argues that Plaintiff's Texas Transportation Claim should be dismissed.  After affording Defendant's arguments due consideration, the Court concludes that Defendant's Motion should be denied for the reasons that follow.

## I.   BACKGROUND

This matter arises out of a dispute between two Kia dealerships in El Paso, Texas.  Until recently, Plaintiff operated the only Kia dealership in the El Paso market.  Pl.'s Second Am. Compl. [hereinafter "SAC"] 1, July 9, 2015, ECF No. 49.  In 2011, however, Kia Motors America, Inc. ("KMA") and Defendant reached an agreement authorizing Defendant to operate a second Kia dealership in the El Paso market.  *Id.* at 9.

---

[1] The Court invited Plaintiff to file a sur-reply when Defendant, for the first time, suggested in its Reply that the Court defer to the Texas Department of Motor Vehicles—Motor Vehicles Division's ("Vehicle Agency") determination that Plaintiff Paso Del Norte Motors, LP (1) lacked standing and (2) alternatively, that even if Plaintiff had standing, Defendant was and is in compliance with the Vehicle Agency requirements.  Order Granting Pl. Opportunity File Sur-reply, Oct. 5, 2015, ECF 111.

To operate as a dealership, Defendant submitted its Franchised New Motor Vehicle Dealer's License Application ("Application") to the Texas Department of Motor Vehicles–Motor Vehicle Division ("Vehicle Agency").  *Id.*  The Application required, *inter alia*, the identity of the owner and general manager.  *Id.* at 5.  In its Application, Defendant identified Bill Barth as the owner and Jason Barth as the general manager.  Mot. Ex. 8, at 29, 34, ECF No. 74.

To prevent the opening of the second Kia dealership, Plaintiff filed a protest with the Vehicle Agency alleging that good cause did not exist for the Vehicle Agency to issue a new motor vehicle dealer's license to Defendant ("Protest Case").  SAC 9.

To resolve the Protest Case and clear the way for two Kia dealerships in El Paso, all parties—Plaintiff, Defendant, and KMA—assented to a written Confidential Settlement Agreement.  *Id.* at 10.  Plaintiff contends that it agreed to dismiss its Protest Case against Defendant if (1) ownership of Defendant would remain entirely with Bill Barth and (2) Jason Barth would serve as the general manager ("Two Conditions").  *Id.*

3

Under the CSA, Plaintiff received $850,000 from Defendant and KMA. Def.'s Third Am. Countercl. Ex. 3, at 3, 7, Sept. 8, 2015, ECF No. 88. Also, KMA provided Plaintiff with not less than 150 new Kia vehicles. *Id.* at 4. In exchange for this financial consideration, Plaintiff agreed to two obligations. First, Plaintiff would dismiss its Protest Case against Defendant. *Id.* at 2—3. Second, Plaintiff agreed that it would not "file any claim, complaint, action, challenge, or protest against or concerning, or otherwise seek to prevent, hinder, or delay the appointment, establishment, opening or operation" of Defendant's Kia dealership ("No-Protest Agreement"). *Id.* at 3.

Sometime thereafter, Plaintiff learned that Defendant's Application contained purportedly false information regarding Defendant's management and ownership structure. SAC at 14—15. Specifically, Plaintiff avers that Defendant did not comply with the Two Conditions because Bill Barth did not fully own Defendant and Paul Graffis, not Jason Barth, would serve as the general manager. *Id.*

Before Defendant could begin its retail operation, Plaintiff filed this lawsuit against Defendant in Texas state court on January 20,

2015. *Id.* at 17. Plaintiff obtained an ex parte Temporary Restraining

Order ("TRO") against Defendant that prevented the opening of the new

Kia dealership. *Id.* Because the Texas state court did not extend the

TRO, Defendant thereafter obtained the necessary Vehicle Agency

licenses and began operating the new Kia dealership in February of

2015. *Id.* at 18.

During this time, Defendant removed the state court case to

federal court. Notice Removal, Feb. 10, 2015, ECF No. 1. Plaintiff's

remaining claim is that Plaintiff has a private right of action under the

Texas Transportation Code.[2] SAC 31—32. Plaintiff alleges that

Defendant violated the Texas Transportation Code in one of two ways.

First, Plaintiff alleges that Defendant submitted a false Application by

providing a different general manager and owner ("Falsification

Claim"). *Id.* Second, even if Defendant did not falsify its Application,

Plaintiff contends that Defendant submitted its Application in an

_____

[2] Plaintiff also brought six other causes of actions—(1) Declaratory
Judgment and Relief, (2) Promissory Estoppel, (3) Fraud, (4) Negligent
Misrepresentation, (5) Breach of Contract, and (6) Attorney's fees. SAC
19—32. However, the Court dismissed these six claims for failing to
state a claim. *See* Mem. Opinion & Order Granting in Part & Denying
in Part Def.'s Mot. Dismiss, Sept. 3, 2015, ECF No. 85.

untimely manner ("Untimely Submission Claim").  *See id.* at 5.
According to Plaintiff, the application requires identification of all
owners and the proposed general manager; if a "material change" occurs
in the application, the dealer must notify the Vehicle Agency.  *Id.* at 5.
Plaintiff asserts that Defendant's change of ownership and general
manager constitutes a "material change."  *Id.* at 6.

On February 24, 2015, Plaintiff filed another complaint with the
Vehicle Agency ("Vehicle Agency Complaint") raising similar
allegations:  the Falsification Claim and the Untimely Submission
Claim.  Mot. Ex. 8, at 3─5; Reply 2.  On that same day, Defendant
submitted an amendment to its Application ("Amendment to the
Application") whereby Defendant identified Paul Graffis as the new
general manager.  Mot. Ex. 6, at 221─24.

Almost a month later, the Vehicle Agency's Director issued a letter
("Vehicle Agency Letter") addressed to Plaintiff's counsel.  Mot. Ex. 9, at
1.  In the Vehicle Agency Letter, the Vehicle Agency Director made two
determinations:  (1) Plaintiff lacked standing to bring a claim pursuant
to section 503.093 of the Texas Transportation Code and

(2) alternatively, that even if Plaintiff had standing, Defendant was and is in compliance with the Vehicle Agency requirements. *Id.* Namely, the Vehicle Agency Director determines that Defendant "properly amended its licensing information to reflect a change in general manger and that the department's current records as to this issue are complete and accurate." *Id.* The Vehicle Agency Director also notes that Defendant never changed its ownership structure. *Id.* Finally, the Vehicle Agency Director indicates that an enforcement complaint against Defendant is unwarranted. *Id.*

Citing the Vehicle Agency Letter, Defendant filed its Motion alleging that res judicata bars Plaintiff from asserting its Texas Transportation Code claim. Mot. 16–18. In addition, Defendant avers that the Court should defer to the Vehicle Agency's decision to dismiss the Vehicle Agency Complaint. Reply 3.

## II.  STANDARD OF REVIEW

### A.  Summary Judgment

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute regarding a material fact exists if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In a motion for summary judgment, "[t]he moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by 'point[ing] out the absence of evidence supporting the nonmoving party's case.'" *Nat'l Ass'n of Gov't Emps.*, 40 F.3d 698, 712 (5th Cir. 1994) (quoting *Latimore v. Smithkline French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990)). If the moving party has satisfied its initial burden, the nonmovant must then come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' *Matsushita,* 475 U.S. at 586, 'conclusory allegations,' *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990), 'unsubstantiated assertions,' *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or only a 'scintilla' of

evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994)."

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

A court conducting a summary-judgment analysis must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). Thus, a court should "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan*, 497 U.S. at 888).

## B.   Diversity Case

Because the present action is a diversity case, the Court must apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "[F]ederal courts must apply the choice of law rules in the forum state in which the court sits." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003). Consequently, the Court will apply Texas law in the instant matter.

## III.   DISCUSSION

### A.   Texas Statutes

In order to provide context, the Court must consider the relevant Texas statutes and regulations before analyzing Defendant's res judicata defense.  Texas law defines Defendant as a franchised motor vehicle dealer.[3]  To operate as a franchised motor vehicle dealer, Defendant must apply to the Texas Department of Motor Vehicles ("DMV"), which operates pursuant to two main statutes:  sections 2301.001—2301.853 of the Texas Occupation Code and title 7, Subchapter 503 of the Transportation Code.

Plaintiff alleges it has standing to enforce the Texas Transportation Code because Defendant violated a provision of this Code.  *See* Mot. Ex. 8, at 3—5.  This statute provides in relevant part:

> The department or *any interested person* may bring an
> action, including an action for an injunction, to:

---

[3] *See* Tex. Occ. Code Ann. § 2301.002(16) ("'Franchised dealer' means a person who:  is engaged in the business of buying, selling, or exchanging new motor vehicles and servicing or repairing motor vehicles under a manufacturer's warranty at an established and permanent place of business under a franchise in effect with a manufacturer or distributor.").

10

(1) enforce a provision of Subchapter B; or

(2) prohibit a person from operating in violation of the person's application for a general distinguishing number.

Tex. Transp. Code Ann. § 503.093(a) (emphasis added). As referenced in section 503.093, Subchapter B addresses a franchised motor vehicle dealer's general distinguishing number—a requirement for obtaining a license to sell motor vehicles. *See* Tex. Transp. Code Ann. § 503.021 ("A person may not engage in business as a dealer, directly or indirectly, including by consignment, without a dealer general distinguishing number.").

As an "interested person,"[4] Plaintiff argues that it has standing to enforce Subchapter B because Defendant violated the Texas Transportation Code in one of two ways—via the Falsification Claim and the Untimely Submission Claim. *See* Mot. Ex. 8, at 3–5. Plaintiff makes this assertion by relying on Texas law. SAC 31–32. To support its Falsification Claim, Plaintiff relies on section 503.034(a)(1) of the

---

[4] *See* Tex. Occ. Code Ann. § 2301.002 (defining a person as "a natural person, partnership, corporation, association, trust, estate, or any other legal entity.")

11

Texas Transportation Code. *Id.* This statute provides that the DMV must deny issuing a general distinguishing number if the applicant falsifies its application. *See* Tex. Transp. Code Ann. § 503.034(a)(1) ("The department shall deny an application . . . if . . . the application is not true."). Among other information, the application requires that the franchised motor vehicle dealer identify the owner and the general manager. *See* Mot. Ex. 8, at 29, 34. To support its Untimely Submission Claim, Plaintiff cites a statute and regulation. "If a *material change* occurs in the information included in an application for a [franchised motor vehicle] dealer's license, the dealer shall notify the [DMV] of the change within a *reasonable time*." *See* SAC 5 (citing Tex. Occ. Code Ann. § 2301.257(b) (emphasis added)). In addition, Texas law requires that the franchised motor vehicle dealer notify the Vehicle Agency if that dealer alters the ownership structure or replaces the general manager. *See* 43 Tex. Admin. Code § 215.104.

## B.   Res Judicata

"Res judicata generally bars re-litigation of claims that actually were or should have been made earlier." *Turner v. Pleasant*, 663 F.3d

12

770, 775 (5th Cir. 2011).  This doctrine "ensures the finality of judgments, shelters litigants from successive litigation, and conserves judicial resources."  *Id.*

State law governs whether a state judgment bars a subsequent federal diversity action.  *Cleckner v. Republic Van & Storage Co.*, 556 F.2d 766, 768─69 (5th Cir. 1977).  In Texas, res judicata, or claim preclusion, has three elements:  "(1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action."  *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

Here, Defendant easily satisfies two of the three elements.  Regarding the second element, both parties are identical—Plaintiff and Defendant were parties in the Vehicle Agency Complaint and are the identical parties present in the instant action.  *See* Mot. Ex. 8, at 3─5.  Regarding the third element, the cause of action remains the same:  Plaintiff's assertion that it has a private right of action under the Texas Transportation Code to enforce a provision of Subchapter B.  *See id.*

The remaining res judicata element is the gravamen of Defendant's defense.  "A judgment is a judgment on the merits if it is a decision as to the parties' rights and liabilities based on the ultimate facts disclosed by the pleadings, evidence, or both, and upon which the right of recovery depends."  *HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 771 (Tex. App.—Dallas 2012, pet. dism'd).  Texas law does not require "an actual trial and canvassing of the facts" to render a judgment on the merits.  *Miller-Link Lumber Co. v. Stephenson*, 265 S.W. 215, 221 (Tex. Civ. App.—Beaumont 1924, writ granted).  Still, res judicata requires a hearing of some kind or an opportunity for a hearing.  *S. Nat. Co. v. Beck & Bridges*, 55 S.W.2d 215, 215 (Tex. Civ. App.—Austin 1932, no writ).

Res judicata can also apply to agency decisions.  The Texas Supreme Court recognizes that "some agency determinations are entitled to preclusive effect in subsequent litigation."  *City of Dall. v. Stewart*, 361 S.W.3d 562, 566 (Tex. 2012).  Thus, generally, courts will accord the force and effect of an administrative decision as a court

judgment.  *Estes v. Hartford Acc. & Indem. Co.*, 46 S.W.2d 413, 417–18

(Tex. Civ. App.—El Paso 1932, writ ref'd).

Indeed, Texas law provides a framework for the DMV to issue its

final orders:

> An order or decision . . . must:
> (1) include a separate finding of fact with respect to each
> specific issue required by law to be considered in reaching a
> decision;
> (2) set forth additional findings of fact and conclusions of law
> on which the order or decision is based;
> (3) give the reasons for the particular actions taken; and
> (4) be signed by the presiding officer or assistant presiding
> officer for the board or other person delegated final order
> authority . . . .

Tex. Occ. Code Ann. § 2301.711(b).  The Vehicle Agency must adhere to

this prescribed outline.  "Where a prescribed power is granted and the

method of its exercise prescribed, the precise method set forth in the act

excludes all others and *must be followed.*"  *See Bryant v. L. H. Moore*

*Canning Co.*, 509 S.W.2d 432, 435 (Tex. Civ. App.—Corpus Christi

1974, cert. denied) (emphasis added) (citing *Cobra Oil & Gas Corp. v.*

*Sadler*, 447 S.W.2d 887, 892 (Tex. 1968)).

Here, Defendant contends that the Vehicle Agency Letter serves

as the "final determination on the merits."  *See Travelers Ins. Co.*, 315

S.W.3d at 862.  Nevertheless, this statute outlines "the precise method" in which to create a final order, and dictates that this process "must be followed."  *See Bryant*, 509 S.W.2d at 435.  Although the Vehicle Agency Letter summarily dismisses Plaintiff's Vehicle Agency Complaint, the Vehicle Agency fails to provide "a separate finding of fact with respect to each specific issue."  *See* Tex. Occ. Code Ann. § 2301.711(b)(1). Rather, the Vehicle Agency Letter makes assertions without citing to a record.  Without the separate finding of fact, the Vehicle Agency Letter circumvents the standards required in section 2301.711(b)(1) of the Texas Occupations Code.  The Court concludes that Defendant's res judicata defense fails because the Court cannot accord the Vehicle Agency Letter with the force and effect of a court judgment.

## C.   **Skidmore Deference**

Although the res judicata doctrine does not bar Plaintiff from relitigating its Texas Transportation cause of action, another doctrine is more persuasive.  Known as the "*Chevron* deference," federal courts have consistently deferred to federal agencies' interpretation of their own statutes.  *See United States v. Mead Corp.*, 533 U.S. 218, 227

(2001).  The "*Chevron* deference" stands for the proposition that if the statute is ambiguous or does not deal with the specific issue, the Court must uphold the agency's interpretation if it is found to be "reasonable." *Nat'l R.R. Passenger Corp. v. Bos. & Me. Corp.*, 1992, 503 U.S. 407, 418 (1992) ("[A] degree of deference is granted to the agency, though a reviewing court need not accept an interpretation which is unreasonable.").

First, the Court must ask whether the regulation is "ambigu[ous] with respect to the specific question considered."  *Moore v. Hannon Food Serv.,* 317 F.3d 489, 495 (5th Cir. 2003).  Second, if the regulation is ambiguous, the agency's interpretation is "controlling unless plainly erroneous or inconsistent with the regulation."  *Auer v. Robbins,* 519 U.S. 452, 461 (1997).  If the regulation is unambiguous, the Court may still consider the agency's interpretation, but only according to its persuasive power.  *See Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944).

"Interpretations such as those in opinion letters . . . do not warrant *Chevron*-style deference . . . . Instead, interpretations

contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore*, but only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (citation omitted).

Recently, the Texas Supreme Court has adopted agency deference regarding its own state agencies. *See R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011) ("We have never expressly adopted the *Chevron* or *Skidmore* doctrines for our consideration of a state agency's construction of a statute, but we agree with the [Railroad] Commission that the analysis in which we engage is similar."). The Texas Supreme Court "will generally uphold an agency's interpretation of a statute it is charged by the Legislature with enforcing, 'so long as the construction is reasonable and does not contradict the plain language of the statute.'" *See id.* (quoting *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008)).

In the Vehicle Agency Letter, the Vehicle Agency Director made two determinations:  (1) Plaintiff lacked standing to bring a claim

pursuant to section 503.093 of the Texas Transportation Code and

(2) alternatively, that even if Plaintiff had standing, Defendant was and

is currently in compliance with the Vehicle Agency's requirements.

Mot. Ex. 9, at 1.  Consequently, Defendant asks the Court to defer to

the Vehicle Agency's determinations.  *See* Reply 4─6.

    The Court will afford the Vehicle Agency Letter's determinations

with "respect" . . .  "but only to the extent that those interpretations

have the 'power to persuade.'"  *See Christensen*, 529 U.S. at 587; *see also*

*R.R. Comm'n of Tex.*, 336 S.W.3d at 625.

    1. <u>Standing</u>

    "The ordinary meaning of the statutory text is the first dip of the

oar as courts embark on interpretation of a statute."  *In re Ford Motor*

*Co.*, 442 S.W.3d 265, 271 (Tex. 2014).  "Undefined terms in a statute are

typically given their ordinary meaning, but if a different or more precise

definition is apparent from the term's use in the context of the statute,

[courts] apply that meaning."  *Id.* (quoting *TGS–NOPEC Geophysical*

*Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)).

The Vehicle Agency was obligated to analyze section 503.093(a) of the Texas Transportation Code to ascertain whether Plaintiff constituted an "interested person[]" that has standing.  Without providing analysis, the Vehicle Agency determined that Plaintiff lacked standing.  Mot. Ex. 9, at 1.  The Court disagrees.  The ordinary meaning of "interested persons" is expansive.  *See In re Ford Motor Co.*, 442 S.W.3d at 271.  To be sure, this statute does not cabin the "interested persons" language.  Plaintiff, as one Kia dealer, has an interest in ensuring that Defendant, a fellow competitor Kia dealer, complies with the Texas Transportation Code.  Because the Court finds the Vehicle Agency Letter's determination that Plaintiff lacked standing unpersuasive, the Court will not afford this conclusion with "respect." *See Christensen*, 529 U.S. at 587; *see also R.R. Comm'n of Tex.*, 336 S.W.3d at 625.

2. <u>Compliance</u>

Despite the Vehicle Agency's questionable conclusion that Plaintiff lacked standing, the Vehicle Agency still addressed both of Plaintiff's concerns:  the ownership structure and the change of general manager.

Mot. Ex. 9, at 1.  In the Vehicle Agency Letter, the Vehicle Agency Director states that that the Defendant "properly amended its licensing information to reflect a change in general manager and that the [Vehicle Agency's] current records as to this issue are complete and accurate." *Id.*  Similarly, the Vehicle Agency Director tackles Plaintiff's assertion that there was a change of ownership:  "the [Vehicle Agency] is satisfied that [Defendant's] ownership has not changed and that the [Vehicle Agency's] current records as to this issue are complete and accurate." *Id.*

In the instant case, the Court will afford the Vehicle Agency's interpretation of its "laws, rules, and regulations" with respect to the extent the Court finds the Vehicle Agency's conclusions persuasive. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002).  Plaintiff argues that Defendant violated the Texas Transportation Code by either falsifying its Application or by submitting any amendments in an untimely manner.  Mot. Ex. 8, at 3—5; Reply 2.

21

The Court will first analyze Plaintiff's Falsification Claim. Plaintiff can point to no evidence that substantiates its Falsification Claim. The Court will not, "in the absence of any proof, assume that the [Plaintiff] could or would prove the necessary facts." *See Little*, 37 F.3d at 1075. To the contrary, Defendant has submitted the Vehicle Agency Letter, which evidences that Defendant's Application is "complete and accurate." *See* Mot. Ex. 9, at 1.

As the movant, Defendant has borne its initial burden of showing that there is no genuine issue for trial. *See Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 712. In contrast, Plaintiff has failed to proffer "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (1986). Notably, Plaintiff has not provided evidence that Defendant falsified its Application. Rather, Plaintiff has made "conclusory allegations" and "unsubstantiated assertions"— neither of which establish that there is a genuine issue for trial. *See*

22

*Little*, 37 F.3d at 1075.[5]  Thus, Plaintiff's Falsification Claim is without merit.

Next, the Court will address Plaintiff's Untimely Submission Claim.  In its Sur-reply, Plaintiff contends that the Court should not defer to the Vehicle Agency's factual determinations.  Sur-reply 3. Namely, Plaintiff avers that Defendant retained Paul Graffis as the general manager in August 2014—almost six months before Defendant's Amendment to the Application.  Sur-reply Ex. 1, at 11—12.

The Vehicle Agency makes an implicit determination that Defendant's Amendment to the Application was conducted in a

———————————————

[5] The Court also notes that Plaintiff cites a conversation between Plaintiff's counsel and Kenneth Herring, a Vehicle Agency Staff Attorney.  Resp. Ex. 1, at 2—4.  During this conversation, Herring purportedly states that the Vehicle Agency did not take into account Chapter 503 of the Texas Transportation Code.  *Id.*  Moreover, according to Plaintiff, Herring's investigation was limited to conversations with counsel from both sides.  *Id.*  Under Federal Rule of Civil Procedure 56(c)(4), a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that *would be admissible in evidence*, and show that that the . . . declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4) (emphasis added).  Whatever Herring informed Plaintiff's counsel of constitutes inadmissible hearsay, Fed. R. Evid. 801(c), 802, and therefore is not competent summary-judgment evidence.  Fed. R. Civ. P. 56(c)(2).

"reasonable time" despite the fact that the Vehicle Agency does not explicitly reference section 2301.257(b) of the Texas Occupations Code. *See* Mot. Ex. 9, at 1.  This conclusion is troublesome.  Although the Vehicle Agency is arguably better equipped than the Court to determine whether a six-month delay constitutes a "reasonable time" to make an Amendment of the Application, the Vehicle Agency shirked its duties in articulating its rationale for its conclusion.  *See In re Discovery Operating, Inc.*, 216 S.W.3d, 898 904 (Tex. App.—Eastland 2007, mandamus denied) (observing that an agency is "staffed with experts trained in handling the complex problems in [that] agency's purview").  Only a fact-finder can determine whether a six-month delay is a "reasonable time" to make an Amendment of the Application pursuant to section 2301.257(b) of the Texas Occupations Code.  *See Thompson v. Pate*, 69 S.W.3d 743, 748 (Tex. App.—El Paso 2002, no pet.) (stating that reasonableness is question of fact unless evidence admits no other conclusion).

Thus, the Court concludes that the Vehicle Agency Letter is unpersuasive in this regard, and it will not afford this document the

24

same "respect" in comparison to persuasive agency determinations.  *See Christensen*, 529 U.S. at 587; *see also R.R. Comm'n of Tex.*, 336 S.W.3d at 625.

In summation, the Court finds that the Vehicle Agency incorrectly concluded that Plaintiff lacked standing and there is a question of material fact whether a six-month delay in amending the Application is "reasonable" pursuant to section 2301.257(b) of the Texas Occupations Code.  *See Thompson*, 69 S.W.3d at 748.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Defendant's Motion should be denied.

Accordingly, **IT IS ORDERED** that Defendant Tri Star Partners, LLC's "Motion for Summary Judgment" (ECF No. 73) is hereby **DENIED**.

**SIGNED** this **20th day** of **October, 2015**.

_____
**PHILIP R. MARTINEZ**
**UNITED STATES DISTRICT JUDGE**